IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

WINDMILL WELLNESS RANCH LLC,  §
E. A.,                                                    §
                                                             §                SA-23-CV-00034-DAE
                        *Plaintiffs,*                   §
                                                             §
vs.                                                       §
                                                             §
H.E.B., INC.,  H.E.B. PPO PLAN,        §
                                                             §
                        *Defendants.*                §

## ORDER

Before the Court in the above-styled cause of action is Defendants' Opposed Motion Objecting to Plaintiffs' Experts' Proposed Testimony [#34], which was referred to the undersigned for disposition.  On October 17, 2023, the Court held a hearing on the motion, at which counsel for all parties appeared via videoconference.  For the reasons that follow, the Court will grant the motion.

## I.  Background

This case arises under the Employee Retirement Income Security Act of 1974 ("ERISA").  Plaintiffs are Windmill Wellness Ranch LLC ("Windmill"), a drug and alcohol rehabilitation facility, and E.A., a patient who received treatment at Windmill.  Plaintiffs allege E.A., as an employee of Defendant H.E.B., Inc. ("HEB"), is a beneficiary of an ERISA plan (Defendant H.E.B. PPO Plan ("the Plan")).  Plaintiffs allege that HEB serves as the sponsor, administrator, and fiduciary of the Plan and violated ERISA by underpaying Windmill for E.A.'s treatment.

Plaintiffs' Original Complaint asserted only one cause of action—an action to recover ERISA benefits under Section 502(a)(1)(B) of ERISA, codified at 29 U.S.C. § 1132(a)(1)(B).

The theory of Plaintiffs' case is that Windmill violated ERISA by representing—through its third-party administrator Blue Cross Blue Shield of Texas ("BCBSTX")—that it would pay Windmill, an out-of-network provider, a percentage of the Medicare rate for E.A's treatment as the Plan's contractual "Allowable Amount," but the ultimate reimbursement provided was far below the appropriate reimbursement rate under the Plan based on Medicare's Usual and Customary Rate ("UCR") and other standards.

Defendants moved to dismiss the Complaint, challenging Windmill's standing to sue the Plan under ERISA and the general plausibility of Plaintiffs' ERISA claims. The District Court denied the motion, finding that Windmill has derivative standing to bring a cause of action against Defendants under ERISA based on an assignment of rights signed by E.A. upon admission to Windmill. (Order [#25].) The District Court also found that Plaintiffs had pleaded a plausible cause of action under ERISA, as the Plan provides for an "Allowable Amount" generally based on a Medicare percentage, and Plaintiffs dispute Defendants' interpretation of this Plan term. However, the District Court expressly stated that, to the extent Plaintiffs are seeking reimbursement under ERISA based on guidelines not provided in the Plan, such as Windmill's UCR or the American Society of Addiction Medicine's coverage recommendations, no such cause of action exists under ERISA. (*Id.*)

After the District Court denied Defendants' motion to dismiss on April 21, 2023, Plaintiffs moved to extend the governing scheduling order deadlines. The District Court granted the motion and issued an Amended Scheduling Order on June 16, 2023, which imposed an expert designation deadline for Plaintiffs of July 14, 2023, a discovery deadline of October 10, 2023, and a dispositive motions deadline of October 25, 2023. (Amended Scheduling Order [#28].) Plaintiffs thereafter moved for leave to file a First Amended Complaint in order to

correct the name of Defendants and to correct the amounts allegedly charged for E.A.'s services and the reimbursed amount paid to date by Defendants. The District Court granted the motion, and Plaintiffs' First Amended Complaint, which is the live pleading, also asserts one single cause of action to recover ERISA benefits under Section 502(a)(1)(B). (Am. Compl. [#32].)

Plaintiffs timely designated experts on July 14, 2023. (Expert Designations [#30].) Plaintiffs designated the following experts: (1) Shannon Malish, Windmill's CEO, to testify as to "how the claims in dispute may have been processed, denied, an/or underpaid"; "appropriate reimbursement for the services provided to the patients for the level of care provided"; and "the type of clinical services provided to the patients at Windmill"; (2) Dmitry Linstengarten, MD, Windmill's Medical Director, to testify "regarding the necessity and the medical services provided, the clinical nature of the services and level of care provided to [E.A.]"; (3) Dr. Ron Luke, a consultant retained to testify as to "the reasonableness of Windmill's charges" and the unreasonableness of Defendants' reimbursement for those charges; and (4) counsel for Plaintiffs to testify on the reasonable and necessary attorneys' fees incurred in this litigation. (*Id.*)

Defendants filed the motion currently before the Court on August 14, 2023, asking the Court to exclude all of Plaintiffs' designated experts. In evaluating the motion, the Court has considered Plaintiffs' response to the motion [#35], Defendants' reply [#38], and the arguments of counsel at the hearing.

## II. Analysis

Defendants' motion raises the following arguments in support of the exclusion of the experts. First, Plaintiffs failed to provide a written report for their retained expert witness (Dr. Luke) as required by Federal Rule of Civil Procedure 26(a)(2)(B). Second, the proposed testimony of the designated experts is not permitted in cases that involve this type of ERISA

claim because ERISA limits expert testimony to specific categories of testimony not addressed by any of the designated experts.  Third, the proposed testimony of the experts violates Rule 702 of the Federal Rules of Evidence because it will not assist the trier of fact.  And, finally, the proposed expert testimony of Plaintiffs' counsel on attorneys' fees is unnecessary in light of the requirement that a fee request be submitted separately under governing Fifth Circuit precedent applying the lodestar methodology after the resolution of the merits of this case.  Plaintiffs' response to Defendants' motion concedes the fourth issue.

The Court first considers Defendants' argument that ERISA limits the use of expert testimony in cases arising under Section 502(a)(1)(B).  Defendants argue that this case is governed by an abuse-of-discretion standard based on a review of the administrative record, and that in such cases, expert opinions are admissible only to the extent such expert testimony helps this Court understand medical terminology and practice.  Because none of the proposed expert testimony seeks to address medical terminology and practice, Defendants argue the experts should be stricken.  Plaintiffs respond that this case may implicate *de novo* review rather than abuse of discretion and generally claim that experts are frequently permitted in ERISA litigation. Regardless of which standard of review applies to resolve the merits of Plaintiffs' claim,[1] Defendants are correct that the designated experts should not be permitted to testify due to limitations on the use of experts in cases arising under Section 502(a)(1)(B).

Section 502(a)(1)(B) of ERISA authorizes a civil action by a plan participant or beneficiary "to recover benefits due to him under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).   Regardless of whether the standard of review is abuse of discretion or *de novo*, a district court's review of an ERISA benefits determination under Section 502(a)(1)(B) is

---

[1] The question of what standard of review applies in this case is a legal issue for the District Court to decide.

limited to the administrative record.  *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 521 (5th Cir. 2000) (citation omitted).   In a *de novo* review, a court independently weighs the facts and opinions in the administrative record to determine whether the ERISA beneficiary is entitled to benefits.  *Koch v. Metro. Life Ins. Co.*, 425 F. Supp. 3d 741, 750 (N.D. Tex. 2019).  Where the standard of review is an abuse of discretion, a denial of benefits will be subject to reversal only if the denial of benefits was "arbitrary and capricious," i.e., not supported by substantial evidence in the administrative record.  *Dramse v. Delta Fam.-Care Disability & Survivorship Plan*, 269 Fed. App'x 470, 478 (5th Cir. 2008).

"Once the administrative record has been determined, the district court may not stray from it but for certain limited exceptions, such as the admission of evidence related to how an administrator has interpreted terms of the plan in other instances, and evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim."  *Bratton*, 215 F.3d at 521.  "Thus, evidence related to how an administrator has interpreted terms of the plan in other instances is admissible."  *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999).  "Likewise, evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim would be equally admissible."  *Id.*  "However, the district court is precluded from receiving evidence to resolve disputed material facts—i.e., a fact the administrator relied on to resolve the merits of the claim itself."  *Id.*   The district court must resolve any disputed factual determinations based on the evidence before the plan administrator.  *Id.* at 295.

The question in this case centers on whether HEB violated the Plan terms in applying its methodology for reimbursing Windmill for E.A.'s treatment.   Here, none of the experts identified by Plaintiffs have been designated to testify as to how HEB, as administrator of the

Plan, has interpreted the relevant terms of the Plan in other instances.  Nor have Plaintiffs designated any experts to testify to assist the Court in its understanding of medical terminology or practice related to E.A.'s benefits claim.  Rather, Plaintiffs' experts are employees of Windmill who intend to testify on the services Windmill provides, the reasonableness of Windmill's charges, the necessity of E.A.'s treatment, and the appropriate reimbursement rate for the services provided.  This evidence is beyond the scope of the administrative record before the Plan administrator at the time of the benefits decision and does not fall under the limited exceptions identified by the Fifth Circuit for admissible evidence beyond that record.  Because Plaintiffs' designated expert witnesses are not experts involved in the interpretation of the Plan or experts designated to assist the Court in interpreting Plan terms, they are not permitted to testify in this case.

Plaintiffs' argument that the relevant Plan term—"Allowable Amount"—is vague and therefore requires expert testimony for its interpretation is without merit.  District courts interpret "plan terms in accordance with their 'ordinary and popular sense as would a person of average intelligence and experience.'"  *Smith v. Life Ins. Co. of N. Am.*, 459 Fed. App'x 480, 484 (5th Cir. 2012) (quoting *Crowell v. Shell Oil Co.*, 541 F.3d 295, 314 (5th Cir. 2008)).  "Thus, the terms are constructed as they would likely be 'understood by the average plan participant, consistent with the statutory language,'" not an industry expert.  *Id.* (quoting *Crowell*, 541 F.3d at 314).

Plaintiffs' response to Defendants' motion contains other meritless arguments.  First, Plaintiffs attempt to assert that this case involves claims raised under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("Parity Act") in addition to a Section 502(a)(1)(B) ERISA claim.  Yet Plaintiffs' First Amended Complaint, the live

pleading, contains only one cause of action—a claim under ERISA for review of a benefits determination.  Plaintiffs refer to the Parity Act in their pleading but do not assert a cause of action under the statute.  Plaintiffs have not requested leave to amend their live pleading to add such a claim, and the time to do so under the governing Amended Scheduling Order has expired. Thus, the question before the Court as to the admissibility of expert testimony by Plaintiffs' designated experts is limited to the lawsuit currently before the Court, which is exclusively a case requesting review under Section 502(a)(1)(B) of an ERISA benefits determination.

Finally, the Court will briefly address Plaintiffs' argument that they should be entitled to discovery to assist their experts in formulating their opinions for their expert reports.  There is no pending motion to reopen discovery before the Court, but Plaintiffs suggested during the Court's hearing that they may request that discovery be reopened.  Despite the requirements of Rule 26 of the Federal Rules of Civil Procedure and the deadlines imposed by the Amended Scheduling Order, Plaintiffs did not produce timely (or any) expert reports for their designated experts. Plaintiffs contend they need to engage in third-party discovery in order to assist their experts in obtaining the necessary data to make informed opinions and conclusions in this case, so that retained experts like Dr. Luke can provide Defendants with an expert report, and the Court should therefore allow this out-of-time discovery.  Plaintiffs also state in their response that they need discovery, including third-party discovery from BCBSTX, in order to submit relevant facts to the Court on a possible claim under the Parity Act and the operation of the Plan from an actuarial standpoint.

The discovery deadline expired in this case on October 10, 2023.  Plaintiffs did not file any motion related to discovery before the expiration of that deadline, and again no discovery motion is currently pending before the Court.  If Plaintiffs were to file a motion to reopen

discovery at this juncture, the motion would be untimely, and the District Court would consider the request under the good-cause standard of Rule 16(b) of the Federal Rules of Civil Procedure, which requires an explanation for the untimely conduct, and a showing as to why discovery beyond the administrative record should be permitted.  *See also* W.D. Tex. Loc. R. CV-16(e) (prohibiting discovery motions from being filed after the close of discovery, absent exceptional circumstances).  Notably, the Court already extended the discovery deadline once at Plaintiff's request, and yet Plaintiffs did not timely serve discovery requests on Defendants during this extended discovery period.  Plaintiffs' arguments regarding discovery do not alter the Court's conclusions regarding the limits on expert testimony in an ERISA case arising under Section 502(a)(1)(B).  Therefore, the Court will strike Plaintiffs' experts because their proposed testimony falls beyond the scope of admissible evidence in this ERISA case.

**IT IS THEREFORE ORDERED** that Defendants' Opposed Motion Objecting to Plaintiffs' Experts' Proposed Testimony [#34] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' expert designation be **STRICKEN** such that none of Plaintiffs' designated experts be permitted to offer expert testimony in this case.

SIGNED this 23rd day of October, 2023.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE